THE PENINSULAR GENERAL ELECTRIC COMPANY V. MARK NORRIS, EXECUTOR, AND DORINDA N. SHEPARD, EXECUTRIX, OF THE LAST WILL AND TESTAMENT OF CHARLES SHEPARD, DECEASED, ET AL.

*Mechanic's lien—Recording laws—Priorities.*

1. The recording laws of this State do not apply, in terms, to mechanics' liens.
2. The fact that an electric company retains the title to an electric lighting plant, which it places in a building, until it is paid

for, will not deprive it of its statutory lien, or prevent the enforcement of the same; citing *Manufacturing Co. v. Smith*, 40 Fed. Rep. 339.

3 The lessee of certain city lots erected a building thereon, after which he renewed his lease for a term of years, and by the same instrument leased for a like term an adjoining lot, and a building which the lessor agreed to erect thereon. The building was erected, and was so constructed that the two buildings formed one block. An electric company, under a contract with the lessee, placed an electric lighting plant in the block, and retained the title until the plant should be paid for. Upon default in such payment, the company filed a bill under the lien law of 1891 to enforce its lien upon the interest of the lessee in the premises. The bill, after setting forth the foregoing facts, charged upon information and belief that the lessor claimed a prior lien under his lease, which was not recorded until after complainant's contract had been performed, upon the interest of the lessee in the block and lots, as security for a large indebtedness due him from the lessee. And it is held that, while the actual interest of the lessee in the buildings is subject to the lien asserted by the complainant, such lien cannot cut off, or have priority over, the lien of the lessor, set forth in the bill.

Appeal from Kent. (Grove, J.)  Argued November 1, 1893.  Decided May 23, 1894.

Bill to enforce a mechanic's lien. Defendants Norris and Shepard appeal. Affirmed, with leave to appellants to answer within 20 days. The facts are stated in the opinion.

*More & Wilson*, for complainant.

*Mark Norris*, for appellants.

LONG, J.  The bill in this case was filed to enforce a mechanic's lien.

The bill states that Charles Shepard is the owner of lots 3, 4, 5, and 6 of block or section 9 of the Campau plat of Grand Rapids, except the west 99 feet of lot 4, and has been the owner for more than 10 years last past; that prior

to May 1, 1890, Carroll S. Hartman, under an agreement with Shepard, had built a brick block on lots 4, 5, and 6, except the west 99 feet of lot 4, by which agreement Shepard leased to Hartman the ground on which the block stood, and Hartman was the owner of the building; that about May 1, 1890, Shepard and his wife made a new lease to Hartman, for 96 years, of the land above described, and by the same instrument leased to Hartman, for the same term, lot 3, and a six-story building to be erected thereon by Shepard; that before May 1, 1892, the building was erected, and was connected with Hartman's building, so that the two buildings or blocks constituted one building, and have been used as such ever since; that Hartman has had possession and control of the entire premises from the time the Shepard building was erected on said lot 3 down to the 29th day of July, 1892.

That Hartman, being in possession and control of the premises under said lease, and being the owner of that part of the building which stands on lots 4, 5, and 6, except the west 99 feet of lot 4, entered into a contract in writing with complainant on May 5, 1892, for the making of certain improvements on said buildings, consisting of an electric lighting plant, with the necessary appliances, wiring, and fixtures; that complainant performed its contract, and furnished labor and materials to the amount of $4,946.67, from which should be deducted a credit of $56.04, leaving a balance due of $4,890.63; that the performance of the labor and the furnishing of the materials were begun May 13, 1892, and ended July 22, 1892; that on July 29, 1892, Hartman made a general assignment for the benefit of his creditors to John Widdicomb, who accepted the trust; that the materials furnished and labor performed by complainant constitute and have made a valuable improvement to said premises, and have largely increased the value thereof.

That on September 3, 1892, complainant filed its claim of lien on said premises in the office of the register of deeds of the county of Kent, with a detailed statement of its account for said labor and materials; that the prices charged were just and reasonable, and in accordance with the contract; that the labor and materials were furnished and went into both of said buildings, which were considered and treated as one building, and the work done and materials furnished under the contract were considered and treated as one job; that copies of the claim of lien were served on Hartman and Widdicomb, his assignee, as required by statute, and proof of service filed in the office of the register of deeds; that there is owing and unpaid upon said contract $4,890.63 over and above all legal set-offs; that complainant has taken the steps required by the statute, and therefore has a lien on the entire interest of Hartman in the premises, which is enforceable in this action.

That complainant is informed and believes that Shepard claims that Hartman is indebted to him in a large amount, and that, under and by virtue of said lease, Shepard has a lien, prior to all other claims, on Hartman's interest in said lands and buildings, for the entire amount of said indebtedness; that, at the time of making said contract with Hartman, complainant was ignorant of Shepard's claim, or Hartman's indebtedness to him, and only learned of it after the assignment to Widdicomb; that, before making the contract, complainant caused an examination of the records in the office of the register of deeds of Kent county to be made, to ascertain if there was any lien or incumbrance on Hartman's interest in said premises, and none was found, and complainant made the contract relying on the results of such examination, and would not have made the contract otherwise; that Shepard did not have his lease recorded in the office of the register of

deeds, or file a copy in the office of the city clerk of Grand Rapids, until the 29th day of July, 1892, the day the assignment to Widdicomb was made; that it was then that complainant first learned of Shepard's claims; that any lien Shepard may have on Hartman's interest should be postponed to complainant's lien.

That complainant has caused an examination to be made of the records in the office of the register of deeds of Kent county, and finds that Peter C. Campbell and John McNabb, copartners under the name of Campbell & Mc-Nabb, have filed a claim of lien, and have commenced a suit to enforce it; that no proceedings at law have been taken to recover the amount due complainant from Hartman for said labor or materials, or any part thereof.

The prayer of the bill is:

1. That complainant be decreed to have a lien upon the entire interest of Hartman in the premises, and the buildings situated thereon.

2. That an account be taken of the amount due complainant, and a decree rendered for the amount found due, with costs.

3. That the rights of Shepard and Hartman under the lease be determined and adjusted; and that complainant's lien be decreed to be prior to any claim of lien of Shepard on Hartman's interest in said premises and buildings, by virtue of the lease, for moneys owing from Hartman to Shepard.

4. That, in default of payment of the decree by Hartman, his interest in the premises be sold to satisfy the decree.

5. That complainant have such other and further relief in the premises as shall be agreeable to equity.

To this bill the Shepards interposed a general demurrer, which was heard in the court below, and overruled. After the demurrer was overruled, Charles Shepard died. The defendants Norris and Dorinda N. Shepard were appointed executors, and the cause was revived, and is now brought here for review. This appeal is based upon the claims:

1. That, under the mechanic's lien law, the complainant's lien can attach only to Hartman's *actual* interest, no matter what his *apparent* interest may have been.

2. That complainant had actual notice of Shepard's lien prior to the time when its lien attached.

3. That complainant can claim no lien under its contract, by the terms of which no title to the materials and machinery is to pass until paid for.

The action is brought under the provisions of Act No. 179, Laws of 1891.[1]   Section 1 provides:

"Every person who shall, in pursuance of any contract, * * * between himself as contractor and the owner, part owner, or lessee of any interest in real estate, build, alter, improve, repair, erect, ornament, or put in, or who shall furnish any labor or materials in or for building, altering, improving, repairing, erecting, ornamenting, or putting in, any house, building, machinery, wharf, or structure, * * * shall have a lien therefor upon such house, building, machinery, wharf, or other structure and its appurtenances, and also upon the entire interest of such owner, part owner, or lessee in and to the lot or piece of land * * * upon which such improvement is made, to the extent of the right, title, and interest of such owner, part owner, or lessee at the time work was commenced or materials were begun to be furnished," etc.

Section 9 provides that liens under the law shall take priority as follows:

"*First.*   As between persons claiming liens under this statute, the several liens upon the same property attaching by reason of work, labor, or materials furnished in carrying forward or completing the same building, machinery, structure, or improvement shall be deemed simultaneous mortgages.

"*Second.*   They shall take priority to all garnishments for the contract debt made prior or subsequent to the commencement of the furnishing of the materials or performance of the labor, without regard to the date of filing the claim for lien."

By subdivision 3, prior liens are not postponed to liens provided for under this statute, and it relates only to liens subsequently acquired.

---

[1] Sections 1, 6, and 9 were amended by Act No. 199, Laws of 1893.

Subdivision 4 has reference to all prior liens; and under it the laborer or material man has a lien upon the building erected, or betterments made to the property, prior to any mortgage or other lien theretofore existing upon the land. If it is an independent building, such building may be sold separately, under the direction of the court, under the proceedings to enforce the lien under this statute, and the purchaser may remove it. If it is an addition to a building, or a betterment, the court is to take an account of the value of the property before the addition or betterment was made, and of the enhanced value caused by such addition or betterment, and, upon a sale of the premises, distribute the proceeds so as to secure to the prior title, mortgage, or lien priority upon the land and improvements to the amount as they existed prior to the commencement of the improvements, and to the lien priority upon the enhanced value caused by such additions, repairs, or betterments.

Section 14 provides that upon final decree the court may order a sale of the buildings or machinery separately, or of the lands, buildings, machinery, structure, or improvements together, or may order the property into the hands of a receiver, to be leased or rented from time to time until the liens shall be discharged, or may make such other order or disposition of the premises as justice may require.

By section 15, it is provided that if any part of the premises can be separated from the residue and sold without damage to the whole, and if the value thereof shall be sufficient to satisfy all the claims proved in the case, the court may order a sale of that part, if it shall appear to be most for the interest of all the parties concerned.

This proceeding is in derogation of the common law, and the statute under which it is brought must be strictly construed. *Wagar v. Briscoe*, 38 Mich. 587; *Knapp v.*

*Swaney,* 56 Id. 345; *Sheridan v. Cameron,* 65 Id. 680; *Lindsay v. Huth,* 74 Id. 712.

In *Wagar v. Briscoe, supra,* the Court said:

"These acts are innovations upon the common law over the rights of property, by permitting the institution of private charges on property without or against the owner's assent, and without any judicial or other official sanction, and by authorizing an enforcement of such charges by unusual and summary methods; and the provisions of these enactments cannot be extended in their operation and effect beyond the plain and fair sense of the terms, and parties asserting liens or titles resting upon them must bring themselves and their titles plainly and distinctly within these terms, and affirmatively make out that a lien was originally effected regularly, and thereafter kept up, and that every essential statutory step, either in the creation, continuance, or enforcement of the lien, has been duly taken."

It appeared in that case that Briscoe, being the owner of certain lots in the city of Detroit, contracted in writing to sell them to one Webster, who took possession under his contract, and erected buildings thereon. Webster paid only $20 down on the lots, and subsequently surrendered his contract. Wagar, representing a lumber company which had furnished materials to Webster to erect a building on the premises in question, filed a lien under the statute, and it was of this statute the Court was speaking. It was said further by the Court:

"The lien is to attach to the contractor's entire interest in the land and its additions made by aid of the contract, but it cannot exceed the interest of the contracting party."

And again the Court said:

"And the same enactments * * * establish the fact that no lien can be induced on any man's ownership, except on the basis of his own indebtedness, and can then be extended no further than his ownership extends."

And again it was said:

"Conceding it was competent for the company to institute a lien against Webster, and to enforce it, under the statute, and still it is evident that the proceedings were required to be confined to his equity, and to be subject to Briscoe's rights."

The proceedings were under the statutes of 1846, as amended by Act No. 127, Laws of 1869 (Comp. Laws 1871, § 6789), which provided that "no lien created by virtue of this act shall exceed the interest of the contracting party."

By the first section of the act under which the present proceeding is brought, and which is set out here, it will be noticed that the lien is to be had "to the extent of the right, title, and interest of such owner, part owner, or lessee at the time work was commenced or materials were begun to be furnished," etc. Some force must be given to these words. It was the evident intent of the Legislature to provide for the lien only upon the actual interest which the owner, part owner, or lessee had at that time; and the force and effect of the statute are no greater' than that of section 6789, Comp. Laws 1871. Nowhere in the act can any different intent be found, except under subdivision 2 of section 9, which provides that liens shall take priority to all garnishments for the contract debt made prior or subsequent to the commencement of the furnishing of the materials or performance of the labor, without regard to the date of filing the claim for lien; and, by subdivision 3, it is provided that they shall be preferred to all other titles, liens, or incumbrances which may attach to or upon such building, machinery, structure, or improvement, or to or upon the land upon which they are situated, subsequent to the commencement of said building, etc. Nowhere in the act is it specified that such liens shall have priority over unrecorded incumbrances or interests in the lands and

premises upon which the structures are erected; but, by plain intendment, such liens are upon only the actual interest of the owner or lessee,—that is, they have priority to the extent of the owner's interest only.   But by sub-division 4 of section 9 the complainant's lien would have priority over all other incumbrances, upon the betterments which complainant actually put in.   Had there been any provision in the lien law, found in many of the lien laws of other states, to the effect that a mechanic's lien should be preferred to any mortgage or other incumbrance of which the lien holder had no notice, and which was unre-corded at the time such lien attached, this difficulty might not arise; but under our statute the lien is to attach "to the extent of the right, title, and interest of such owner," etc., "at the time work was commenced or materials were begun to be furnished."   This was held in *Miller v. Stod-dard,* 50 Minn. 272, under a somewhat similar statute to our own.   It was further said in that case that the pro-visions of the statute relative to the recording of mort-gages had no application, as by that statute there was no obligation resting upon the mortgagee to record his mort-gage, as against mechanics' liens; that its provisions did not apply or extend to such liens.   Our statute (How. Stat. § 5683) provides that—

"Every conveyance of real estate within this State, hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any portion thereof, whose con-veyance shall be first duly recorded."

This section applies to mortgages and assignments thereof, as well as to deeds. *Burns v. Berry,* 42 Mich. 179. So that the recording statutes of this State do not apply, in terms, to mechanics' liens.

In the present case the bill shows that defendant Hart-

man was in the possession of a building on lot 3, which belonged to Charles Shepard. This building was erected by Shepard, and leased to Hartman for 96 years. Prior to that time, Hartman had leased from Shepard lots 4, 5, and 6 (except a small parcel on lot 4), and Hartman had put a building on that. Hartman was the owner of this building, and Shepard of the lots; but, by the same instrument, Shepard had given a lease for 96 years on these lots. The bill does not state whether any rent was reserved on these premises to Shepard, but it does state that Shepard claims some lien upon them, and that it is prior to the complainant's. Presumably, from the statements in the bill, it is this reservation of rents which Shepard claims. It therefore appears that the property owned by Hartman is the brick building on lots 4, 5, and 6, and that he has a lease of the land on which it stands for 96 years. He does not own the building on lot 3, but that and the lot are owned by Shepard. Whatever Hartman's actual interests are in these buildings, they are subject to the complainant's claim. The manner of the enforcement of such claim is pointed out by the statute; but the interest of complainant cannot cut off, or have priority over, the interest of Shepard acquired before that time, though such claim of lien or interest may not have been recorded.

2. It is immaterial, therefore, whether the complainant had notice of Shepard's interest in the property.

3. We think there can be no doubt that complainant could have and enforce its lien upon Hartman's entire actual interest in the premises, notwithstanding it retained the title to the materials furnished. There can be no objection to a creditor's having more than one security for the same debt. In the case of *Manufacturing Co. v. Smith,* decided in the United States court of Tennessee, and reported in 40 Fed. Rep. 339, it was said:

"Instead of being inconsistent, it was merely additional security to that provided by the statute. It certainly does not establish, as matter of law, that, in thus retaining title to the machinery, complainant has waived its statutory lien upon the lot of ground or premises on which the machinery was placed."

The bill states a cause calling for equitable relief, and the order overruling the demurrer must be affirmed, with costs. Defendants will have 20 days to answer complainant's bill.

The other Justices concurred.